**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN DOE** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **KENNETH SCHNEIDER, <u>et al.</u>** | : | **NO. 08-3805** |

Goldberg, J.                                                                       September 30, 2013

<u>**MEMORANDUM OPINION**</u>

This lawsuit, brought primarily under the Child Abuse Victims' Rights Act, 18 U.S.C. § 2255, stems from allegations that Defendant, Kenneth Schneider, groomed and then systematically molested Plaintiff, Roman Zavarov, over a span of approximately six years. Plaintiff, an aspiring ballet dancer, was twelve-years-old when these acts are first alleged to have occurred.

Although the complaint was filed in 2008, resolution of this civil case has been significantly delayed due to the filing of federal criminal charges against Kenneth Schneider. On October 1, 2010, Schneider was convicted by a jury of traveling in foreign commerce with the intent to engage in sex with a minor between the ages of twelve and sixteen, in violation of 18 U.S.C. § 2423(b) (Count I of the indictment), and transporting a person in foreign commerce with the intent that such person engage in criminal sexual conduct, in violation of 18 U.S.C. § 2421 (Count II of the indictment).  On September 21, 2011, the Honorable Juan R. Sánchez, who presided over the criminal trial, granted a judgment of acquittal on Count II of the indictment and subsequently sentenced Schneider to fifteen years incarceration.

1

Currently before the Court are Plaintiff's motion for partial summary judgment and the Defendants' cross-motions for summary judgment.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff was born in Kazakhstan on March 21, 1986.  He began studying to become a ballet dancer at the Bolshoi Ballet Academy in Moscow, Russia when he was ten years old.  In 1998, when Plaintiff was twelve, his parents could no longer afford to pay for the school's dormitories, and because the Academy was nearly forty-five minutes from their home, Plaintiff's parents were forced to withdraw him from the school.  Shortly thereafter, Plaintiff's teachers introduced him to Defendant Kenneth Schneider, who was associated with a non-profit organization devoted to supporting students of the arts.  Schneider lived in an apartment close to the Bolshoi Ballet Academy and offered to house Plaintiff during the week so that he could continue his attendance there.  It was explained that Plaintiff would sleep on a pull-out couch in Schneider's apartment during the school week and return to his parents' home on weekends, holidays and during the summer.  Plaintiff and his parents accepted this offer, and Plaintiff began living with Schneider during the school week in 1998.  (Pl.'s Trial Testimony, Doc. No. 125-1, Ex. G, pp. 2-7, 9, 13.)

Plaintiff asserts that shortly after moving into Kenneth Schneider's apartment, Schneider began sexually abusing him, including having him engage in oral and anal sex, and that such abuse continued over a period of several years.[2]  Schneider denies having ever sexually abused

---

[1] The facts listed below are undisputed, unless otherwise noted.

[2] An extensive recitation of the alleged abuse and the grooming behaviors engaged in by Kenneth Schneider can be found in the Opinion authored by the Judge Sánchez addressing Kenneth

Plaintiff and has appealed his conviction to the United States Court of Appeals for the Third

Circuit.[3]

---

Schneider's motion for judgment of acquittal.  See United States v. Schneider, 817 F. Supp. 2d 586 (E.D. Pa. 2011).

[3] Plaintiff asserts that Kenneth Schneider's criminal conviction and the doctrine of collateral estoppel prohibit Defendants from denying that Schneider sexually abused Plaintiff.  Collateral estoppel applies only if "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."  Anderson v. C.I.R., 698 F.3d 160, 164 (3d Cir. 2012) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992)).

While Schneider was convicted of traveling in foreign commerce with the intent to engage in sex with a minor between the ages of twelve and sixteen, in violation of 18 U.S.C. § 2423(b), such conviction does not require a finding by the jury that any sexual abuse of a minor actually took place, just that Schneider had such intent.  See United States v. Tykarsky, 446 F.3d 458, 469 (3d Cir. 2006) (holding that a conviction under § 2423(b) does not require a showing of illicit sexual contact); United States v. Hersh, 297 F.3d 1233, 1245-46 (11th Cir. 2002) ("[§ 2423(b)] does not require the government to prove that actual sexual activity took place") (emphasis in original).  Therefore, we find that Schneider's conviction does not preclude Defendants from disputing that illicit sexual contact occurred.

Plaintiff also argues that we must accept Judge Sánchez's findings of fact from Schneider's sentencing hearing, wherein Judge Sánchez applied a four-level enhancement under U.S.S.G. § 2A3.1(b)(1), finding that Schneider engaged in forcible sexual conduct.  (Schneider's Sentencing Tr., Doc. No. 125-1, Ex. H, pp. 13-20, 40-41.)  A review of the sentencing proceeding reflects that discussion and argument on this issue was limited.  (Id. at 15-18.)

This issue—the collateral effect of facts found by a sentencing judge—has not been fleshed out by the Third Circuit.  However, we agree with the approach taken by the United States Court of Appeals for the Second Circuit—that the burden rests with the plaintiff to demonstrate that it would be clearly fair and efficient to collaterally estop a defendant from re-litigating findings from a sentencing hearing in subsequent civil litigation.  Sec. Exch. Comm'n v. Monarch Funding Corp., 192 F.3d 295, 306 (2d Cir. 1999).  Plaintiff has not addressed these issues, and thus has not met his burden.  As noted above, this issue was not fully litigated during the sentencing hearing, and thus it would be improper to apply the doctrine of collateral estoppel to Judge Sánchez's findings of sexual abuse.  See Maciel v. C.I.R., 489 F.3d 1018, 1023 (9th Cir. 2007) (finding that criminal sentencing proceedings should not ordinarily be given preclusive effect in subsequent civil litigation); Monarch Funding Corp., 192 F.3d at 303-06 (listing numerous reasons why it is presumptively improper to collaterally estop a defendant from re-litigating findings from a sentencing hearing in a subsequent civil case); United States v.

Much of the sexual abuse alleged by Plaintiff took place in Kenneth Schneider's apartment in Russia.  However, in the summer of 2001, when Plaintiff was fifteen-years-old, he and Schneider travelled to the home of Schneider's parents, Dr. Bernard Schneider and Marjorie Schneider, in Berwyn, Pennsylvania.  (Pl.'s Dep. July 9, 2012, Doc. No. 144-3, pp. 7-8, 10.)  This trip was made so that Plaintiff could attend the summer program at The Rock School in Philadelphia, Pennsylvania.  (Pl.'s Trial Testimony, p. 45.)  Plaintiff and Kenneth Schneider also made a trip to the home of Bernard and Marjorie Schneider in the summer of 2002.  (Pl.'s Dep. July 9, 2012, p. 13.)

Plaintiff has testified that Kenneth Schneider did not initiate oral or anal sex at any time while in Pennsylvania.  However, Plaintiff asserts that Bernard and Marjorie Schneider, as well as Kenneth Schneider's sister, Dr. Susan Schneider, were aware of the abuse because they witnessed incidents of kissing, hugging and hand-holding that took place in the family's home over these summers.  (Pl.'s Trial Testimony, pp. 48-49.)  These Defendants deny that they were ever aware of any sexual contact between Plaintiff and Kenneth Schneider.  (See Bernard & Marjorie Schneider Br., Doc. No. 145, pp. 5-7; Susan Schneider Br., Doc. No. 144,  p. 6.)

In further support of his assertion that Schneider's family was aware of the alleged sexual abuse, Plaintiff claims that Marjorie Schneider witnessed a kiss on the lips between Plaintiff and Kenneth Schneider in the family's dining room in the summer of 2001.  (Pl.'s Dep. July 9, 2012, pp. 11-12.)  Marjorie Schneider denies ever having witnessed such contact.  (Marjorie Schneider Trial Testimony, Doc. No. 125-1, Ex. D, p. 6.49.)  Additionally, at some point during his stays

_____

Mickman, 1993 WL 541683, at *3-4 (E.D. Pa. Dec. 22, 1993) (declining to apply the doctrine of collateral estoppel with regard to a sentencing court's findings in subsequent civil litigation due to concerns over the defendant's opportunity to fully and fairly litigate the issue).

with the Schneider family, although it is not clear whether it was in 2001 or 2002, Plaintiff testified that Kenneth Schneider fondled him in a closed bedroom, and that Marjorie Schneider knocked and was let into the room.  Plaintiff admits, however, that Marjorie Schneider did not witness any fondling.  (Pl.'s Dep. Feb. 28, 2012, Doc. No. 144-1, Ex. B, pp. 163-64, 179.)

With regard to Bernard Schneider, Plaintiff asserts that he knew of the sexual abuse because his wife must have told him about the kiss she witnessed.  (Pl.'s Trial Testimony, pp. 84-87.)  As for Susan Schneider, Plaintiff asserts that in the summer of 2002, she witnessed Kenneth Schneider and Plaintiff sitting on a bed, holding hands.  (Pl.'s Dep. Feb. 28, 2012, pp. 83-88.)  During a family dinner that same summer, upon a suggestion being made that Kenneth Schneider should get married, Plaintiff asserts that Susan Schneider further demonstrated knowledge of the abuse by stating, "yeah, like that's going to happen."  (Id. at pp. 102-03.)

In 2002, after spending the summer at the Schneider's Pennsylvania home, Kenneth Schneider and Plaintiff moved to Cambridge, Massachusetts, and remained there until 2004, when Plaintiff completed high school.  (Pl.'s Dep. July 9, 2012, p. 17.)  Plaintiff has testified that he and Kenneth Schneider engaged in sexual contact in Massachusetts during this time period.  Plaintiff also testified that he and Kenneth Schneider took a vacation to Montana in 2003, where they engaged in sexual contact.  (Id. at p. 23.)

From 2004 to 2005, when Plaintiff was eighteen and nineteen years old, he obtained employment as a dancer for the American Ballet Theater in New York.  At certain points during this time period, he lived with Susan Schneider at her New York City apartment.  Plaintiff testified that he and Kenneth Schneider did not engage in sexual contact while he was living in New York or anytime thereafter.  (Id. at pp. 22-23, 35.)

After working briefly in New York, Plaintiff returned to Massachusetts from 2005 through 2006 to work for the Boston Ballet.  He was eventually fired from the Boston Ballet for poor performance, which Plaintiff claims stemmed from depression, and he returned to Philadelphia to live with Marjorie and Bernard Schneider.  Plaintiff met his wife, Gina Zavarov, in 2006 while living with the Schneiders.  (Id. at pp. 28-31.)

Over Christmas in 2006, Plaintiff attempted suicide and was hospitalized.  Shortly thereafter, he moved in with Gina Zavarov and her family.  (Pl.'s Trial Testimony, pp. 61-62, 64.)  Around this time period, Marjorie Schneider arranged a meeting with Plaintiff and asked him to sign a release which stated as follows:

> Bernard Schneider, Marjorie Schneider and Kenneth Schneider (the "Hosts") have acted as host family and legal guardians for Roman Andreyevich Zavarov (the "Guest"), a citizen of the Russian Federation, from the year 1998 until the year 2007.  During this time, the guest also received assistance and support from The Apogee Foundation, a New York not-for-profit corporation ("Apogee").[4]  This reconciliation dated January 12, 2007, establishes that the Guest is now ceasing to be hosted by the Hosts and will no longer have his financial status guaranteed by the Hosts or by Apogee. . . . The Parties each acknowledge and agree that no harm has come to the Guest at any time by virtue of his relationship and activities with the Hosts or with Apogee, and the Guest forever releases, acquits and discharges the Hosts and all relatives of the Hosts as well as Apogee . . . of all causes of action, claims and liabilities of any kind.

Plaintiff, Marjorie Schneider, Bernard Schneider and Kenneth Schneider, on his own behalf and on behalf of The Apogee Foundation, signed the release.  (Reconciliation, Doc. No. 125-1, Ex. B.)

---

[4] Defendant, The Apogee Foundation, is a non-profit international organization devoted to supporting the arts and students of the arts.  Bernard and Marjorie Schneider were on the board of directors at one time, but at present, Bernard is listed as an advisor and Marjorie is listed as Assistant Secretary of the Foundation.  Susan Schneider is currently on the board of directors, while Kenneth Schneider is on the board of directors and is also the president of the foundation.  (Marjorie Schneider Dep., Doc. No. 144-6, Ex. 1.)

6

In summary, Plaintiff has testified that he was sexually abused by Kenneth Schneider from 1998 through 2004, or from ages twelve through eighteen.  (Pl.'s Dep. Feb. 28, 2012, pp. 115, 136-37.)  He described very specific incidences of sexual abuse from his early childhood, while living in Russia with Schneider.  (Id. at pp. 127-32.)  However, when Plaintiff was asked directly about the sexual contact that occurred between him and Schneider when he was between the ages of sixteen and eighteen, Plaintiff testified that he initiated sex with Schneider on more than one occasion during that time period.  (Id. at pp. 132-33.)  Plaintiff explained that from ages sixteen through eighteen, he had perceived the sexual contact to be consensual, testifying as follows:

Q: Did you try to stop his advances when you were 18 years of age?

A: I did not.

Q: Why not?

A: Because I loved him.

Q: Okay.  Do you believe that when you were 18 years old the sex that you had with Mr. Schneider in Boston was consensual?

A: Yes.
. . .

Q: Did you believe that the sex you were having with Mr. Schneider when you were 17 was consensual?

A: Yes.
. . .
Q: Okay.  And did you believe that the sex you had with Mr. Schneider when you're 16—when you were 16 years of age was consensual?

A: Yes.

(Id. at pp. 143, 145, 147.)  Despite acknowledging that he initiated sexual contact with Schneider during this time period and that he perceived the sex to be consensual, Plaintiff continues to assert that this contact constitutes sexual abuse, testifying as follows:

> Q: And when you were 17 years old and you initiated sex with Mr. Schneider, do you believe in your mind that's part of the time period you were molested?
>
> A: Yes.

(Id. at pp. 136-37.)

As a result of his relationship with Kenneth Schneider, Plaintiff explains that he has sought mental health treatment, which specifically focuses on his memories of abuse.  He maintains that he suffers from depression and alcoholism, and is often withdrawn from his peers. He claims to have difficulty performing at work, making friends and maintaining relationships. (Pl.'s Dep. July 9, 2012, pp. 29-31, 51-53, 117-21.)

Plaintiff filed his original complaint on August 12, 2008, and filed an amended complaint on August 29, 2008.  Following this Court's opinion partially granting Defendants' motion to dismiss,[5] the remaining claims are as follows: (1) violation of the Child Abuse Victims' Rights Act ("CAVRA"), 18 U.S.C. § 2255, against all Defendants ("Count I"); (2) assault and battery against Kenneth Schneider ("Count II"); (3) negligent hiring and supervision against The Apogee Foundation, Susan Schneider, Marjorie Schneider and Bernard Schneider ("Count III"); (4) breach of fiduciary duty against all Defendants ("Count IV"); and (5) intentional infliction of emotional distress against Marjorie Schneider ("Count VI").

---

[5] In this Court's Memorandum Opinion and Order addressing Defendants' motion to dismiss, Plaintiff's claims for vicarious liability and RICO violations were dismissed, as were Plaintiff's wife, Gina Zavarov's claims for negligent infliction of emotional distress, intentional infliction of emotional distress and loss of consortium.  Doe v. Schneider, 667 F. Supp. 2d 524 (E.D. Pa. 2009).

Plaintiff filed a motion for partial summary judgment on Counts I and IV.  Thereafter, Defendants filed cross-motions for summary judgment on all Counts.[6]  The motions are now fully briefed and ready for disposition.

## II.    **STANDARD OF REVIEW**

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that judgment is appropriate as a matter of law. FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  The non-moving party cannot avert summary judgment with speculation or conclusory allegations, but rather must cite to the record.  Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); FED. R. CIV. P. 56(c).

On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 256.  Courts may not make credibility determinations at the summary judgment stage.  Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993) cert. denied, 510 U.S. 994 (1993)).  The same burdens and

---

[6] Susan and Kenneth Schneider each filed individual motions for summary judgment.  (Doc. Nos. 146, 144.)  Alternatively, one motion for summary judgment was filed on behalf of Defendants Bernard Schneider, Marjorie Schneider and The Apogee Foundation.  (Doc. No. 145.)

standards apply with regard to cross-motions for summary judgment.   Appelmans v. City of

Phila., 826 F.2d 214, 216 (3d Cir. 1987).

## III.   DISCUSSION

### A.   Count I – Violation of the Child Abuse Victims' Rights Act ("CAVRA")

Kenneth Schneider asserts that, even accepting all facts in the light most favorable to

Plaintiff, summary judgment is warranted because Plaintiff has failed to present a timely claim.

Schneider stresses that, in deposition, Plaintiff acknowledged that he believed the sexual contact

from between the ages of sixteen and eighteen was consensual.   Because the age of consent in all

relevant jurisdictions is sixteen, Schneider concludes that the only sexual contact alleged by

Plaintiff that falls within the statute of limitations was consensual, and thus not actionable.   To

the extent that Plaintiff has pointed to any nonconsensual conduct that is alleged to have

occurred before Plaintiff was sixteen, Schneider asserts that the conduct is barred by the statute

of limitations. The remaining Defendants argue that they cannot be held liable under CAVRA

because Plaintiff has not presented sufficient evidence to support aiding and abetting liability.

### 1.   Has Plaintiff Presented a Timely Claim Under the Child Abuse Victims' Rights Act?

Under CAVRA, 18 U.S.C. § 2255, "[a]ny person who, while a minor, was a victim of a

violation of section . . . 2421, 2422, or 2423[7] of th[at] title and who suffers personal injury as a

result of such violation, regardless of whether the injury occurred while such person was a

---

[7] In addressing Defendants' motion to dismiss the amended complaint, this Court determined that Plaintiff had stated a claim under CAVRA for violations of sections 2421, 2422 and 2423.   Doe v. Schneider, 667 F. Supp. 2d 524, 529-30 (E.D. Pa. 2009).   Although Kenneth Schneider argues that the Court need only consider section 2423 in deciding his motion, we disagree.   We find that the facts alleged by Plaintiff could potentially implicate sections 2421, 2422 and 2423, and will therefore consider all three statutes in our analysis.

minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee." Id. at § 2255(a).  The statute of limitations is six years from the date the right of action first accrues. Id. at § 2255(b) (1998) (amended 2013).[8]

Here, suit was initiated on August 12, 2008, when Plaintiff was twenty-two years of age. Thus, absent any tolling exception, the six-year statute of limitations would act to bar recovery on any allegations of sexual abuse taking place prior to August 12, 2002, when Plaintiff was sixteen-years-old.

Plaintiff has asserted that Kenneth Schneider has violated sections 2421, 2422 and 2423, which would give rise to liability under CAVRA.  18 U.S.C. § 2421 prohibits any person from "knowingly transport[ing] any individual in interstate or foreign commerce . . . with intent that such individual engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempt[ing] to do so[.]"  Similarly, 18 U.S.C. § 2422(b)  prohibits using the

---

[8] Although not applicable here, in the case of a legal disability, such as minority, if, at the end of the six-year statute of limitations period a plaintiff is still a minor, the cause of action expires when the plaintiff turns twenty-one.  Id.

We also note that CAVRA was amended effective March 7, 2013, increasing the statute of limitations from six years to ten years.  However, an increased statute of limitations may not be used in order to revive an untimely claim "absent clear congressional intent to the contrary." Lieberman v. Cambridge Partners, L.L.C., 432 F.3d 482, 489 (3d Cir. 2006) (quoting Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994)).  This rule has been established because "resurrection of previously time-barred claims increase[s] a party's liability by abolishing a complete defense to suit."  Id. at 492 (quotation marks omitted).  As Congress has not unambiguously expressed intent for CAVRA's increased statute of limitations to revive previously time-barred claims, we will apply the six-year statute of limitations in our analysis. See 18 U.S.C. § 2255 (2013); S. Rep. No. 112-153 (2012); H.R. Rep. 112-480 (2012).

mails or any facility of interstate commerce to persuade, induce, entice or coerce a person under the age of 18 to engage in any sexual activity for which a person can be charged with a criminal offense. 18 U.S.C. § 2423(a) prohibits "knowingly transport[ing] an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in . . . sexual activity for which any person can be charged with a criminal offense." And finally, 18 U.S.C. §§ 2423(b) through (d) prohibit travelling in foreign commerce, or from arranging, inducing, procuring or facilitating the travel of another person, for the purpose of engaging in "illicit sexual conduct," as defined by Chapter 109A of Title 18 of the United States Code.

One common requirement under all of these sections is that the purpose of the interstate travel or transport must be sexual activity that is punishable as a criminal offense or that meets the definition of illicit sexual conduct. Therefore, in order to determine whether the alleged conduct was actionable under CAVRA, we must examine the criminal statutes of the three states in which sexual activity is alleged to have taken place, as well as the definition of illicit sexual conduct under Chapter 109A.

In Pennsylvania,[9] Montana and Massachusetts, the age of consent for sexual activity is sixteen. See 18 PA. CONS. STAT. ANN. § 3122.1; MONT. CODE ANN. § 45-5-501; MASS. GEN. LAWS ANN. ch. 265, § 22A. The age of consent is also sixteen years under Chapter 109A. 18 U.S.C. § 2243. In all relevant jurisdictions, consent is generally a defense to criminal sexual conduct. See, e.g., Commonwealth v. Prince, 719 A.2d 1086, 1090 (Pa. Super. 1998)

---

[9] In their motions, Defendants highlight Plaintiff's trial testimony in which he stated that only kissing, hugging and handholding occurred in Pennsylvania. However, as we must accept the facts in the light most favorable to the Plaintiff, we will also consider his deposition testimony that fondling occurred in Pennsylvania in either the summer of 2001 or 2002.

(recognizing that consent at the time of the sexual contact is a defense to a charge of rape, involuntary deviate sexual intercourse and sexual assault); Commonwealth v. Cretinon, 2011 WL 383022, at *1 (Mass. App. Ct. Feb. 8, 2011) (recognizing that the government must prove lack of consent as an element of indecent assault and battery); MONT. CODE ANN. § 45-5-502, § 45-5-503 (requiring lack of consent as an element of sexual assault and rape); United States v. Smith, 336 Fed. Appx. 978, 985 (11th Cir. 2009) (recognizing that consensual sodomy is generally not prohibited by Chapter 109A). As Plaintiff had attained the age of consent during the relevant, actionable time period—August 12, 2002 through August 12, 2008—a finding that he consented to the sexual contact, and that the consent was valid, would act to bar liability under CAVRA. As noted previously, Plaintiff has testified that the sexual activity between him and Schneider after he reached the age of sixteen was consensual. (See pp. 7-8, supra.) Consequently, at first glance it appears as if Plaintiff's claims are time barred.

Despite Plaintiff's admissions regarding consent, cases within this Circuit and elsewhere have found that consent may be ineffectual where the person with whom he or she was engaged in sexual activity maintains a position of authority, a position of trust or a position of custody over the individual.[10]

In supplemental briefing on this issue, Kenneth Schneider asserts that Plaintiff has not presented sufficient evidence to demonstrate that he was subjected to force, either actual or constructive, that would overcome his admission during deposition that he consented to the sexual contact beginning at age sixteen. Relevant state legislatures have enacted statutes that

---

[10]   We note that this argument was only raised by Plaintiff's counsel after we requested additional briefing on this issue.

provide specific instances where consent will be ineffectual, or overcome by "constructive force."  For example, in Pennsylvania, consent will be considered ineffective if:

> (2) [I]t is given by a person who by reason of youth, mental disease or defect or intoxication is manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense; . . . [or]

> (4) [I]t is induced by force, duress or deception of a kind sought to be prevented by the law defining the offense.

18 PA. CONS. STAT. ANN. § 311.  Montana defines "incapable of consent" to include "overcome by deception [or] coercion."  MONT. CODE ANN. § 45-5-501.  Further, the Massachusetts courts have interpreted its rape statutes' lack-of-consent requirement to be satisfied by a showing of constructive force.  Commonwealth v. Caracciola, 569 N.E.2d 774, 776-77 (Mass. 1991).  In Massachusetts, constructive force may be shown by an assertion of "power, influence, and control to overcome the victim's will" and may be "viewed in light of the history of the[ ] relationship and the defendant's predatory behavior."  Commonwealth v. Wallace, 922 N.E.2d 834, 839-40 (Mass. App. Ct. 2010) (quotation marks omitted).

In Chancellor v. Pottsgrove School District, 501 F. Supp. 2d 695 (E.D. Pa. 2007), the district court faced a scenario where a seventeen-year-old student, who acknowledged having consensual sex with her teacher, sued her school district for sexual harassment under Title IX.  A finding of valid consent would have negated liability under Title IX.  In determining whether the plaintiff's consent was valid, the court considered precedent where: (1) an aggressor abusing a position of authority or trust was found to negate consent; and (2) adults were held liable for sexual contact with minors over the age of sixteen through "corruption of minors laws."  Id. at 705-06.  Ultimately the court concluded that the plaintiff did not have the capacity to consent to

14

her teacher's sexual advances.  Id. at 706; see also Doe v. Fournier, 851 F. Supp. 2d 207, 220 (D. Mass. 2012) (noting that the imbalance of power between teacher and student could negate consent).

The findings of Chancellor are buttressed by the holdings in numerous other cases where courts have found that prisoners cannot consent to sexual contact with prison guards due to the innate power disparity created by the custodial relationship.  See, e.g., Wood v. Beauclair, 692 F.3d 1041, 1046-47 (9th Cir. 2012) (finding that "the power dynamics between prisoners and guards make it difficult to discern consent from coercion" and likening the relationship to a student and teacher); Lobozzo v. Colo. Dept. of Corr., 429 Fed. Appx. 707, 711 (10th Cir. 2011) (finding that an inmate cannot consent to sexual activity with a guard); Carrigan v. Davis, 70 F. Supp. 2d 448, 453 n. 3 (D. Del 1999) (finding that the consent defense is unavailable to a prison guard who has sex with an inmate).  Chapter 109A also criminalizes sexual contact between a prisoner and a guard, regardless of consent.  18 U.S.C. § 2243.

The reasoning applied to teacher-student relationships and inmate-guard relationships has also been extended to familial relationships.  In Commonwealth v. Newcomb, 954 N.E.2d 67 (Mass. App. Ct. 2011), the defendant was charged with raping his adult daughter.  The Commonwealth presented evidence that the defendant began having sex with his daughter when she was thirteen or fourteen-years-old.  Although the evidence showed that the victim did not attempt to stop her father's advances when she became an adult, the court determined that a reasonable jury could find that the history of abuse dating back to the victim's childhood by a person in a position of authority and custody could render the victim incapable of consenting to the sexual contact.  Id. at 69-72.

After careful consideration, we conclude that the reasoning of the cases discussed above could extend to the relationship between Kenneth Schneider and Plaintiff, rendering Plaintiff incapable of valid consent.  Schneider provided housing for Plaintiff at the age of twelve, and acted in a parental role while Plaintiff was in school.  Plaintiff began taking international vacations with Schneider at the age of fifteen, and when Plaintiff reached the age of sixteen, the Schneiders sponsored him and acted as his legal guardians in the United States.  Schneider maintained a custodial role in Plaintiff's life for a number of years, and held a position of authority and trust.  The evidence of record, viewed in the light most favorable to Plaintiff, could establish that Kenneth Schneider manipulated and groomed Plaintiff, isolating him from peers his own age and his parents.  (See Pl.'s Dep. July 9, 2012, pp. 45-46; Pl.'s Trial Testimony, pp. 32-33, 42, 51.)  Given this history, the allegations of sexual abuse extending back to Plaintiff's childhood, and the significant power disparity between a child and his guardian, we find that a reasonable jury could determine that Plaintiff did not have the capacity to consent to sexual activity with Kenneth Schneider from the ages of sixteen through eighteen.

If Plaintiff's consent to sexual activity between the ages of sixteen and eighteen could be ineffectual, a question of fact remains as to whether Kenneth Schneider violated sections 2421, 2422 or 2423 by engaging in criminal sexual activity after August 12, 2002, such that he would be liable under CAVRA.  Because Plaintiff testified that he and Schneider had sex in Montana and Massachusetts, summary judgment is defeated for this time period.[11]

---

[11] Although Plaintiff testified at deposition that he was fondled in Pennsylvania, it is not clear from his testimony whether this contact is alleged to have happened in the summer of 2001, and thus prior to the statute of limitations, or in the summer of 2002.  As summary judgment may not be refuted with conjecture, a fact finder will only consider whether nonconsensual sexual activity took place in Massachusetts and Montana.

2.      Should the Statute of Limitations be Tolled?

Plaintiff also asserts that the conduct that was found to have occurred on August 22, 2001 by a criminal jury mandates summary judgment be granted in his favor; however, as we noted previously, that conduct is time barred.  Plaintiff presents two theories as to why the statute of limitations should be tolled and that conduct occurring before August 12, 2002, should be considered.  First, Plaintiff asserts that the six-year statute of limitations under CAVRA should be tolled for 396 days, or from June 29, 2007 through August 12, 2008, because Kenneth Schneider was out of the country during that time period. (See Pl.'s Resp. to Kenneth Schneider's Mot., Ex. A.)  In support of his theory, Plaintiff points to 42 PA. CONS. STAT. ANN. § 5532(a), which provides:

> If, after a cause of action has accrued against a person, he departs from this Commonwealth and remains continuously absent therefrom for four months or more, . . . the time of his absence . . . is not a part of the time within which the action or proceeding must be commenced.

However, Plaintiff ignores the exceptions to the statute, one of which provides that tolling shall not apply "[w]hile jurisdiction over the person of the defendant can be obtained without personal delivery of process to him within this Commonwealth."  Id. at § 5532(b)(3).

Under the Pennsylvania long-arm statute, jurisdiction over a defendant who resides outside the Commonwealth can be obtained through service by certified mail.  42 PA. CONS. STAT. ANN. §§ 5322, 5323; Johnson v. Stuenzi, 696 A.2d 237, 239 (Pa. Super. Ct. 1997).  Recognizing that plaintiffs have a duty to diligently attempt to locate defendants and effectuate service, courts conducting an analysis under section 5532 must

> look at the efforts made by the plaintiff to locate the defendant from the plaintiff's perspective.  If it is concluded that the plaintiff(s) made a reasonably diligent effort to find the defendant yet the defendant was not located, then the limitations

period will be tolled for the period of time which the defendant was out of state and not located.  If it is concluded that the plaintiff's efforts fell short of reasonable diligence, the period of absence will still be tolled if it is concluded that it is more likely than not that a reasonably diligent effort would have failed to result in the finding and successful serving of the defendant within a total countable time equal to the limitations period.

Johnson, 696 A.2d at 242-43 (emphasis in original).

While it is unrefuted that Kenneth Schneider remained out of the country for a period of 396 days, Plaintiff has failed to present any evidence of diligence on his part to locate Kenneth Schneider.  Plaintiff has even failed to argue that he was unaware of Schneider's location during his time abroad.  As there are no facts on the record to suggest that Plaintiff was ever unaware of Kenneth Schneider's location or that any efforts were made to locate and/or serve him during this 396-day period, Plaintiff has not satisfied the requirements of 42 PA. CONS. STAT. ANN. § 5532.  Thus, we disagree with Plaintiff's assertion that tolling is appropriate under this statute.[12]

Plaintiff also asserts that the doctrine of equitable tolling should be applied, in order to allow the Court to consider Kenneth Schneider's conduct occurring prior to August 12, 2002.  Courts apply the doctrine of equitable tolling to all federal statutes of limitation unless Congress specifically provides otherwise.  Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 504 (3d Cir. 1998) (quoting Holmberg v. Armbrecht, 327 U.S. 392, 396-97 (1946)).  Equitable tolling "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been

---

[12] Plaintiff's assertion is further undermined by the fact that jurisdiction over Kenneth Schneider was ultimately obtained by his attorney's acceptance of a waiver of service on August 13, 2008. (Doc. No. 3.)  The waiver of service indicates that Kenneth Schneider's attorney was authorized to accept service on behalf of his client and that Plaintiff was aware of this fact.  See 42 PA. CONS. STAT. ANN. § 5532(b)(1) (tolling does not apply while a designation is in force that will allow a person within the Commonwealth to be served in lieu of personal service upon the defendant).

prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009) (quoting Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999)).

Generally, there are three situations where tolling of the statute of limitations may be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 591 (3d Cir. 2005). "[A] plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim." Santos ex rel. Beato, 559 F.3d at 197. The doctrine provides extraordinary relief, and should be used sparingly. Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005). The burden of demonstrating that equitable tolling is appropriate lies with the party seeking to assert it. See Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006).

The only argument Plaintiff raises in support of equitable tolling is that he was sexually abused. While the abuse Plaintiff allegedly suffered is certainly horrific, such allegations are likely to be present in most cases brought under the Child Abuse Victims' Rights Act. Therefore, we are reluctant to conclude that Plaintiff's circumstances are so unique and extraordinary that it warrants tolling the statute of limitations. Adopting Plaintiff's argument could require tolling in most CAVRA cases, and would render the statute of limitations meaningless.

In summary, we find that tolling of the statute of limitations under CAVRA is not appropriate.  However, genuine disputes of material fact remain as to whether Plaintiff was sexually abused by Kenneth Schneider from August 12, 2002 through March 21, 2004. Accordingly, both Plaintiff's motion for partial summary judgment and Kenneth Schneider's motion for summary judgment are denied as to Count I.

      3.  <u>Aiding and Abetting</u>

Plaintiff also asserts claims under CAVRA against Bernard Schneider, Marjorie Schneider, Susan Schneider and The Apogee Foundation under an aiding and abetting theory of liability.  In order to establish aiding and abetting pursuant to 18 U.S.C. § 2,[13] such that these Defendants would be liable under CAVRA, the Plaintiff must demonstrate that: "(1) the substantive offense has been committed; (2) the defendant knew the offense was being committed; and (3) the defendant acted with the intent to facilitate it."  <u>Doe v. Liberatore</u>, 478 F. Supp. 2d 742, 756 (M.D. Pa. 2007) (citing <u>United States v. Cartwright</u>, 359 F.3d 281, 287 (3d Cir. 2004)).

     Plaintiff has presented the following evidence with regard to the knowledge and intent of these Defendants: (1) that Marjorie Schneider witnessed a kiss between Plaintiff and Kenneth Schneider when Plaintiff was fifteen; (2) that by virtue of being married to Marjorie Schneider, Bernard Schneider must have known about the kiss; (3) that Susan Schneider witnessed Plaintiff and her brother, Kenneth Schneider, holding hands while sitting on a bed; (4) that Susan

---

[13] 18 U.S.C. § 2 states, "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal." Therefore, if we were to find that the remaining Defendants had aided and abetted Kenneth Schneider in committing a crime enumerated in CAVRA, they could be held liable.  See <u>Doe v. Liberatore</u>, 478 F. Supp. 2d 742, 756 (M.D. Pa. 2007).

Schneider made a comment intimating that Kenneth Schneider would never get married; and (5) that Marjorie Schneider presented a liability release to Plaintiff after he left the Schneiders' home, which was signed by Marjorie, Bernard and Kenneth Schneider.

This evidence could potentially raise a genuine question of material fact as to whether Marjorie Schneider had knowledge of the alleged abuse.  However, Plaintiff has not presented any evidence to suggest that these Defendants, including Marjorie Schneider, provided any assistance to Kenneth Schneider in carrying out the alleged abuse, nor that they had "the same state of mind as required for the principal offense"—that is, the intent for Kenneth Schneider to engage in criminal sexual activity with Plaintiff.   See Liberatore, 478 F. Supp. 2d at 756 (summary judgment granted in favor of Diocese defendants where the only evidence of aiding and abetting was that those defendants may have had reason to suspect sexual abuse). Accordingly, summary judgment is appropriate on Count I with regard to Defendants Bernard Schneider, Marjorie Schneider, Susan Schneider and The Apogee Foundation.

### B.  Count II – Assault and Battery

Count II of Plaintiff's amended complaint raises a claim for assault and battery against Kenneth Schneider.  Schneider again requests summary judgment, raising a statute of limitations defense.  Plaintiff has not responded to Kenneth Schneider's motion on Count II.[14]

In Pennsylvania, assault is defined as "an act intended to put another in reasonable apprehension of an immediate battery, which succeeds in causing an apprehension of such a

---

[14] Although neither Plaintiff's motion for partial summary judgment, nor his response to Kenneth Schneider's motion for summary judgment address Count II of his amended complaint, a court may not grant a motion for summary judgment as uncontested without considering the merits of the motion.  Pineda v. Philadelphia Media Holdings, LLC, 542 F. Supp. 2d 419, 420 (E.D. Pa. 2008); see also FED. R. CIV. P. 56(e).

battery." <u>Stewart v. Kinch</u>, 2012 WL 6645547, at *7 (E.D. Pa. Dec. 21, 2012).   Battery is defined as "a harmful or offensive contact with a person resulting from an act intended to cause the plaintiff . . . to suffer such contact." <u>Pugh v. Downs</u>, 2010 WL 2331430, at *2 (E.D. Pa. June 4, 2010) (citing <u>Dalrymple v. Brown</u>, 701 A.2d 164, 170 (Pa. 1997)).   We conclude that Plaintiff's assertions of unconsented to sexual contact by Kenneth Schneider could qualify as an assault and battery.   However, as noted above, Schneider alleges that these claims are barred by the statute of limitations.

Plaintiff has presented evidence that in 2001 and 2002, he was subjected to an unwelcome kiss, handholding and fondling in Pennsylvania.   As previously noted, Plaintiff has also presented evidence of sexual contact in Massachusetts and Montana when he was between the ages of sixteen and eighteen, which a jury could reasonably conclude were not consensual.

"A federal court sitting in Pennsylvania must apply the same statute of limitations and tolling principles on state law claims as would a Pennsylvania state court." <u>Farrell v. A.I. DuPont Hosp. for Children of Nemours Found.</u>, 2006 WL 2035146, at *3 (E.D. Pa. July 19, 2006) (quoting <u>Everwine v. The Nemours Found.</u>, 2006 WL 891060, at *2 (E.D. Pa. Apr. 4, 2006)).   The Pennsylvania Uniform Statute of Limitations on Foreign Claims Act, also known as Pennsylvania's borrowing statute, provides as follows: "The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa. Cons. Stat. Ann. § 5521(b).

The Pennsylvania statute of limitations currently in effect for childhood victims of sexual abuse states as follows:

(2) (i) If an individual entitled to bring a civil action arising from childhood sexual abuse is under 18 years of age at the time the cause of action accrues, the individual shall have a period of 12 years after attaining 18 years of age in which to commence an action for damages regardless of whether the individual files a criminal complaint regarding the childhood sexual abuse.

(ii) For the purposes of this paragraph, the term "childhood sexual abuse" shall include, but not be limited to, the following sexual activities between a minor and an adult, provided that the individual bringing the civil action engaged in such activities as a result of forcible compulsion or by threat of forcible compulsion[15] which would prevent resistance by a person of reasonable resolution:

> (A) sexual intercourse, which includes penetration, however slight, of any body part or object into the sex organ of another;
>
> (B) deviate sexual intercourse, which includes sexual intercourse per os or per anus; and
>
> (C) indecent contact, which includes any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire in either person.

42 PA. CONS. STAT. ANN. § 5533(b)(2).[16]

---

[15] Forcible compulsion is defined as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 PA. CONS. STAT. ANN. § 3101. "Effective consent to sexual intercourse will negate a finding of forcible compulsion." Commonwealth v. Rhodes, 510 A.2d 1217, 1225 (Pa. 1986). However, for the reasons discussed in Part III.A.1, supra, we find that a reasonable jury could consider the sexual activity that took place between 2002 and 2004 to be the result of emotional or psychological force, and thus satisfy the definition of forcible compulsion.

[16] Defendants previously argued in their motion to dismiss that we should not apply this extended statute of limitations for any alleged batteries taking place in Pennsylvania prior to the statute's effective date—August 27, 2002. We disagree. Pennsylvania case law dictates that "a new statute of limitations should apply to . . . cases where the right to sue has accrued but not yet expired under the former statute of limitations." Maycock v. Gravely Corp., 508 A.2d 330, 333 (Pa. Super. Ct. 1986) (emphasis in original) (citations omitted). The prior version of section 5533 provided that where an individual is a minor at the time a cause of action accrues, the period of minority should not be included in determining the statute of limitations. Therefore, as the general statute of limitations for assault and battery in Pennsylvania is two years, a plaintiff who was battered as a minor would not be barred from bringing suit until they reached the age of twenty. See Slee v. Heller, 1999 WL 178560, at *2-3 (E.D. Pa. Mar. 29, 1999) (recognizing

The fondling incidents which allegedly occurred in Pennsylvania that Plaintiff testified took place in either the summer of 2001 or 2002 could meet the definition of childhood sexual abuse under subsection (C) provided above.  Therefore, as Plaintiff filed his complaint in 2008, within twelve years of reaching age eighteen, as required by Pennsylvania's statute of limitations, summary judgment on Count II will be denied.

Although we find that Count II survives summary judgment, we also recognize that some of the conduct alleged by Plaintiff may be barred by the statute of limitations.  With regard to the sexual intercourse Plaintiff alleges occurred in Massachusetts, we must compare the Massachusetts and Pennsylvania statutes of limitation to determine which would first bar the claim.  In Massachusetts, the statute of limitations for victims of childhood sexual abuse requires that an action be brought within three years of reaching the age of majority or "within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by" the sexual abuse.  MASS. GEN. LAWS ANN. ch. 260, § 4C.  This statute implicates what is known as the "discovery rule."  A plaintiff seeking to avail himself of the discovery rule in Massachusetts "bears the burden of proving 'both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge,' and in order to survive summary judgment, must demonstrate a reasonable expectation of proving that

---

Pennsylvania's two-year statute of limitations for tort claims and that section 5533 tolls the statute of limitations for minors until they reach the age of majority).

Section 5533 was amended to increase the statute of limitations in August of 2002, when Plaintiff was sixteen.  He was still a minor at that time, and even under the prior version of section 5533, the statute of limitations was tolled.  As described in Maycock, his right to sue had accrued but not yet expired when the statute was amended, and therefore, the extended statute of limitations should apply to all allegations of sexual abuse in Pennsylvania.

the claim was timely filed." Doe v. Foot Locker Corporate Svcs. Inc., 2008 WL 5467610, at *4 (Mass. Super. Ct. Apr. 3, 2008) (quoting Koe v. Mercer, 876 N.E.2d 831, 836 (Mass. 2007)).

Plaintiff has not argued that the discovery rule should apply, and has not presented sufficient evidence to find that he did not discover his injury at the time it occurred.  As Plaintiff bears the burden of demonstrating that the discovery rule should apply, we find that the standard three-year statute of limitations, tolled until Plaintiff reached eighteen, is appropriate.  Plaintiff testified that the sexual contact between himself and Kenneth Schneider continued through the age of eighteen.  Therefore, under the Massachusetts statute of limitations, Plaintiff's claim for assault and battery would be barred, at the very latest on March 20, 2008, three years from Plaintiff's last day at age eighteen.  Under Pennsylvania's Uniform Statute of Limitations on Foreign Claims Act, the Massachusetts statute of limitations should be applied, as it would be the first to bar Plaintiff's claim.  Because Plaintiff did not file his complaint until August 12, 2008, his claim for assault and battery regarding any of the alleged abuse in Massachusetts is time-barred.

Finally, with regard to the sexual intercourse Plaintiff asserts occurred in Montana, we must also compare the Montana and Pennsylvania statutes of limitations.  Montana's statute of limitations for childhood sexual abuse requires a lawsuit be brought within three years of the Plaintiff reaching the age of majority. MONT. CODE ANN. § 27-2-216.  Montana also employs the discovery rule, allowing a plaintiff to initiate a lawsuit within three years of when the plaintiff discovered or reasonably should have discovered the injury.  Id.  As in Massachusetts, Montana courts require the plaintiff to present evidence that he did not discover the injury until some later date. Werre v. David, 913 P.2d 625, 630 (Mont. 1996).  Again, as Plaintiff has not presented

evidence to suggest that he was unaware of his injury until reaching adulthood, we will apply the standard three-year statute of limitations, which should be tolled until Plaintiff reaches the age of majority.  As previously discussed, Plaintiff did not file his complaint until more than four years after reaching the age of eighteen.  Therefore, we find that any allegations of sexual abuse taking place in Montana are also time-barred.

### C.  Count III – Negligent Hiring and Supervision

Count III of the amended complaint sets forth a cause of action for negligent hiring and supervision against The Apogee Foundation, Susan Schneider, Bernard Schneider and Marjorie Schneider.  Defendants argue that under Pennsylvania law only the employer may be held liable under the theory of negligent hiring and supervision for the intentional misconduct of an employee, not individual members of the company's board of directors.   With regard to The Apogee Foundation, Defendants assert that the Foundation did not exist until its incorporation in 2004, and therefore cannot be liable for alleged actions by Kenneth Schneider taken prior to that date.

"Under Pennsylvania law, an employer is subject to liability for harm resulting from [its employee's] conduct if [it] is negligent or reckless 'in the employment of improper persons or instrumentalities in work involving risk of harm to others; . . . in the supervision of the activity; or . . . in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.'"  Doe v. Liberatore, 478 F. Supp. 2d 742, 760 (M.D. Pa. 2007) (quoting R.A. ex rel. N.A., 748 A.2d 692, 697 (Pa. Super. Ct. 2000)).  A plaintiff seeking to establish a claim of negligent supervision must demonstrate that his injury was caused by the following: "(1) a failure to exercise ordinary care

26

to prevent an intentional harm by an employee acting outside the scope of his employment;[17] (2) that is committed on the employer's premises; (3) when the employer knows or has reason to know of the necessity and ability to control the employee." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 487-88 (3d Cir. 2013) (citing Dempsey v. Walso Bureau, Inc., 246 A.2d 418, 420 (Pa. 1968)). As noted by the Third Circuit in Belmont, liability for negligent hiring and supervision under Pennsylvania law is generally imposed on the employer corporation, and not individual directors. Id. at 487-89.

Initially, we note that Plaintiff has failed to present any evidence to support his contention that Marjorie Schneider, Bernard Schneider or Susan Schneider was involved in hiring Kenneth Schneider, or, that as members of the board of directors, they asserted any supervisory authority over him. Additionally, we agree with Defendants' argument that a claim for negligent hiring and supervision should properly be asserted directly against the employer. See id. Accordingly, summary judgment will be granted as to Bernard Schneider, Marjorie Schneider and Susan Schneider on Count III.

However, with regard to The Apogee Foundation, we do not agree with Defendants' argument that all evidence indicates that the Foundation did not exist until 2004. To the contrary, the company's own website indicates that "[t]he Foundation's President, Kenneth Schneider, established the Foundation in 1997 while working in Moscow[.]" (Marjorie Schneider Dep., Ex. 2.) Therefore, there is a genuine dispute of material fact as to when The Apogee Foundation came into existence, such that it could be held liable for negligent

---

[17] Plaintiff's amended complaint also set forth a claim for vicarious liability in Count III. This Court granted Defendants' motion to dismiss as to that claim, finding that the alleged sexual abuse occurred outside the scope of Kenneth Schneider's employment. Doe v. Schneider, 667 F. Supp. 2d 524, 531 (E.D. Pa. 2009).

supervision of Kenneth Schneider.   In any event, even if Defendants are correct and the Foundation was not in existence until 2004, we have already determined that Plaintiff has presented evidence of sexual abuse extending into 2004.

Defendants do not present any further arguments disputing Plaintiff's ability to demonstrate negligent supervision on the part of The Apogee Foundation; therefore, summary judgment will be denied on Count III as to that Defendant.

### D.  Count IV - Breach of Fiduciary Duty

Plaintiff has also presented claims against all Defendants for breach of fiduciary duty. "A person in a fiduciary relationship to another is under a duty to act for the benefit of the other as to matters within the scope of the relationship. . . . Fiduciary relationships include not only the relation of trustee and beneficiary, but also, among others, guardian-ward, agent-principal, attorney-client, and partnership relationships."  RESTATEMENT (THIRD) OF TRUSTS § 2 cmt. b (2003).  The general test for determining the existence of a fiduciary relationship is whether it is clear that the parties did not deal on equal terms.  Doe v. Liberatore, 478 F. Supp. 2d 742, 765 (M.D. Pa. 2007) (citing Frowen v. Blank, 425 A.2d 412, 416 (1981)).

We find that a reasonable jury could determine that a fiduciary relationship existed between Plaintiff and Kenneth Schneider, as Schneider established a guardian-ward relationship with Plaintiff through housing and caring for Plaintiff both in Russia and in the United States. The same argument applies to Marjorie and Bernard Schneider, who were Plaintiff's legal guardians and host family for many of the years Plaintiff spent in the United States.  (See Marjorie Schneider Trial Testimony, p. 6.59.)  Further, Bernard Schneider acted as Plaintiff's primary physician while Plaintiff was living with the Schneiders, and therefore occupied a

position of trust.  (Id. at p. 6.64.)  With regard to The Apogee Foundation, Plaintiff was its beneficiary, receiving financial and professional support.  (See Marjorie Schneider Dep., Ex. 1.) The Foundation advertises itself as "support[ing] cultural institutions and individual artists, [and] providing administrative, promotional and financial assistance" to students of the arts.  (Id. at Ex. 2.)  Therefore, we find that a reasonable jury could also conclude that The Apogee Foundation had a fiduciary duty to Plaintiff.

However, with regard to Defendant Susan Schneider, the evidence presented by Plaintiff demonstrates that she only met Plaintiff one time before the alleged abuse ended, which was during a short visit to her parents' home in the summer of 2002.  This encounter did not create a fiduciary relationship.  Although Susan Schneider is also a physician, both parties agree that she never provided Plaintiff with medical advice or examined him.  (Susan Schneider Dep., Doc. No. 144-5, p. 104; Pl.'s Dep. Feb. 28, 2012, pp. 106-07.)  Both parties agree that she never discussed his ballet performances or aspirations.  (Susan Schneider Dep., pp. 102-04; Pl.'s Dep. Feb. 28, 2012, pp. 106-07.)  She did not become involved with The Apogee Foundation until 2005, after the alleged abuse had ended.  (Susan Schneier Dep., p. 64.)  Therefore, we agree with Susan Schneider that she was not in a position of trust, nor did she develop a special relationship with Plaintiff, such that she would owe him a fiduciary duty.  Accordingly, summary judgment should be granted on Count IV as to Susan Schneider.

With regard to the remaining Defendants, we must determine whether Plaintiff has presented evidence that a breach of the fiduciary duty occurred within the time prescribed by the statute of limitations.  Pennsylvania maintains a two-year statute of limitations for claims of breach of fiduciary duty.  Maillie v. Greater Del. Valley Health Care, Inc., 628 A.2d 528, 532

(Pa. Cmwlth. 1993); 42 PA. CONS. STAT. ANN. § 5524.  "One in a fiduciary relationship with another is under a duty to act solely in the best interest of that person."  <u>Vicky M. v. Ne. Educ. Intermediate Unit 19</u>, 486 F. Supp. 2d 437, 459 (M.D. Pa. 2007).  Marjorie Schneider presented Plaintiff with the "Reconciliation" drafted by Kenneth Schneider, which seeks to limit all liabilities arising out of Plaintiff's time with the Schneiders.  The Reconciliation was signed by Plaintiff on January 12, 2007, within two years of the filing of the complaint.  A reasonable jury could find that a defendant with knowledge of the alleged sexual abuse would be breaching a fiduciary duty by having Plaintiff sign the release, particularly without the advice of an attorney.[18]

Plaintiff has presented evidence that Kenneth Schneider, by virtue of his association with The Apogee Foundation, was able to sexually abuse him over a period of years.  Kenneth Schneider then allegedly prepared and signed the release on behalf of himself and The Apogee

---

[18] Plaintiff argues in his motion for summary judgment that the two-year statute of limitations should be tolled to include the alleged incidences of sexual abuse because he did not discover that Marjorie and Bernard Schneider were his legal guardians until he was presented with the Reconciliation.  The discovery rule only applies where a plaintiff, despite the exercise of reasonable diligence, is reasonably unaware of an injury.  <u>Dalrymple v. Brown</u>, 701 A.2d 164, 167 (Pa. 1997).  This standard is objective, not subjective.  <u>Id.</u>  We find that it was not objectively reasonable for Plaintiff to be unaware of the Schneiders' status as his legal guardians and host family until he was presented with the Reconciliation.  Plaintiff knew that the Schneiders provided financial support and housing during his time in the United States.  He lived with a member of the Schneider family for the vast majority of his time in the country. Therefore, we will only consider whether the Reconciliation could constitute a breach of fiduciary duty.

Foundation.  We find that evidence to be sufficient to survive summary judgment as to these two Defendants.[19]

With regard to Marjorie Schneider, the evidence in the light most favorable to Plaintiff suggests that she witnessed a kiss between her middle-aged son, Kenneth Schneider, and his fifteen-year-old ward.  We find that witnessing such an event could reasonably put Marjorie Schneider on notice as to the alleged abuse.  Therefore, we find that a reasonable jury could determine that when Marjorie Schneider presented Plaintiff with the Reconciliation and directed him to sign it without the advice of an attorney, she breached a fiduciary duty to Plaintiff.

Finally, we find that Plaintiff has not presented sufficient evidence to suggest that Bernard Schneider was aware of the alleged sexual abuse.  The only evidence of his knowledge was that, by virtue of his marriage to Marjorie Schneider, he must have known about the kiss she is alleged to have witnessed, which is entirely speculative.  Having failed to present evidence to suggest that Bernard Schneider was aware of the alleged abuse, we find that no reasonable jury could find that Bernard Schneider breached a fiduciary duty to Plaintiff simply by signing the Reconciliation.  Therefore, we find that summary judgment is appropriate.[20]

---

[19] We will deny Plaintiff's motion for summary judgment on Count IV, because, as explained in note 3, supra, we must consider the issue of whether Kenneth Schneider sexually abused Plaintiff to be in dispute.

[20] Plaintiff spends much of his motion for summary judgment, as well as his responses to the Defendants' motions discussing Pennsylvania's Child Protective Services Act, 23 PA. CONS. STAT. ANN. § 6311.  This statute creates an affirmative duty for persons who work with children, including physicians, to report a reasonable suspicion of sexual abuse.  It appears that Plaintiff is attempting to utilize this statute in an effort to assert liability against Bernard Schneider and Susan Schneider.  However, while a potential violation of this statute has been interpreted by courts to support a claim for negligence per se, see Liberatore, 478 F. Supp. 2d at 763-64, Plaintiff did not plead a claim for negligence per se in his amended complaint.  (See Am. Compl.)  Further, the statute requires such a person to report abuse when he or she "has

### E.  Count VI - Intentional Infliction of Emotional Distress

Finally, Plaintiff has presented a claim for intentional infliction of emotional distress against Marjorie Schneider.  The amended complaint asserts Marjorie Schneider intentionally caused Plaintiff emotional distress when she convinced him to sign the Reconciliation following his failed suicide attempt in 2006.  It is alleged that the Reconciliation was an effort to insulate herself, her family and The Apogee Foundation from any liability arising from Plaintiff's time spent under the Schneiders' care.[21]

Under Pennsylvania law, a claim for intentional infliction of emotional distress requires a plaintiff to establish the following elements: "(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979).  Extreme and outrageous conduct is defined as "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Atkinson v. City of Philadelphia, 2000 WL 793193, at *6 (E.D. Pa. June 20, 2000) (quotation marks and citations omitted). Pennsylvania courts also require a plaintiff asserting a claim for intentional infliction of

---

reasonable cause to suspect" child abuse.  As previously discussed, the evidence presented by Plaintiff does not support a finding of knowledge on the part of either Susan Schneider or Bernard Schneider.

[21] Although Plaintiff's amended complaint asserts that Marjorie Schneider threatened him with deportation, the record does not support this assertion.  Plaintiff did not testify at deposition, nor at Kenneth Schneider's criminal trial, that Marjorie Schneider threatened to deport him.  The only place this allegation appears is in an uncertified email from Plaintiff's mother-in-law, Kathy D'Amico to her attorney.  (Doc. No. 145-2, Ex. 8.)  This letter constitutes hearsay, and thus cannot be considered in deciding a motion for summary judgment.  Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

emotional distress to provide evidence of a physical injury caused by the defendant's conduct. Hart v. O'Malley, 647 A.2d 542, 554 (Pa. Super. Ct. 1994).

Plaintiff has failed to present evidence that Marjorie Schneider's conduct led to severe emotional distress or that it caused a physical injury.  While Plaintiff has certainly presented evidence of severe emotional distress that has manifested into physical symptoms, this distress has been repeatedly tied to the allegations of sexual abuse, not to any action taken by Marjorie Schneider.  Therefore, Marjorie Schneider's motion for summary judgment will be granted as to Count VI.

### IV.    **CONCLUSION**

For the reasons listed above, Kenneth Schneider's motion for summary judgment will be denied in its entirety, and Susan Schneider's motion for summary judgment will be granted in its entirety.

The motion for summary judgment filed by Bernard Schneider, Marjorie Schneider and The Apogee Foundation will be granted in part and denied in part, consistent with this Opinion. With regard to Bernard Schneider, the motion will be granted on all counts.  With regard to Marjorie Schneider, the motion will be granted as to Counts I (CAVRA), III (negligent hiring and supervision) and VI (intentional infliction of emotional distress), but denied as to Count IV (breach of fiduciary duty).  With regard to The Apogee Foundation, the motion will be granted as to Count I (CAVRA) and denied as to Counts III (negligent hiring and supervision) and IV (breach of fiduciary duty).  Finally, Plaintiff's motion for partial summary judgment is denied.

Our Order follows.